## Ex Parte CROWTHER.
## CROWTHER v. FREE et al.

No. 17222—Opinion Filed Sept. 7, 1926.

(Syllabus.)

**Habeas Corpus—Right to Writ by Guardian Against Person Assisting in Concealment of Child.**

Where the duly appointed guardian files his application for a writ of habeas corpus to regain control of his ward, then exercised by a third party, and it appears from the pleadings and the evidence that the applicant for the writ is the legal and duly appointed and acting guardian and his guardianship has not been terminated, this court will issue such writ directing the return of such child to the custody of her guardian, and it is no defense for the respondent that the child is not in his actual custody and that he does not know its whereabouts, where the whole record, taken together, shows to the satisfaction of the court that he is insincere in making such claims and that he is assisting his wife in concealing the whereabouts of such child.

Original action in this court by Eugene Crowther, petitioner, against Anna Miles Free and N. R. Free, for writ of habeas corpus to obtain the custody of his minor child and ward. Writ granted.

H. P. White, for petitioner.

Wallace Wilkinson, for respondents.

PHELPS, J. This is an original action, wherein Eugene Crowther files his petition in this court praying for the issuance of a writ of habeas corpus to Anna Miles Free and N. R. Free directing them to produce the body of his twelve year old daughter, Marie Versa Crowther, and that upon a hearing that said child be discharged from the custody and control of Anna Miles Free and N. R. Free and returned to petitioner, who is also the duly appointed, qualified, and acting guardian of her person. The writ was served upon N. R. Free, who appeared before this court, and the matter having been referred to Honorable Wyley Jones, referee, testimony was by him taken and filed herein.

An examination of the record reveals that much of the testimony taken has no bearing upon the issues before us. It appears, however, that the petitioner was appointed guardian of the person of his minor child by the county court of Osage county, the child's mother having been dead several years, and that Anna Miles Free is the maternal aunt of said child, living with her husband, N. R. Free, in Pittsburg county, and that much of the time since the death of the child's mother she has lived in their home; that the county court of Osage county made an order authorizing the child to be placed in the custody of Anna Miles Free and N. R. Free during the period of the Christmas holidays of 1925, to be returned to her guardian or to the school she was attending at the expiration of such holiday period. At the expiration of such holiday period they refused to surrender custody of the child, and the county court of Osage county issued an order to the sheriff of Pittsburg county, directing him to take said child into his custody and return her to the Osage county court; at the same time said court issued a citation, directing Anna Miles Free and N. R. Free to appear in court on the 25th day of February, 1926, to show cause why they should not be punished for contempt of court in failing and refusing to obey the order to return the child. A deputy sheriff, accompanied by his wife, went to the Free home and served these orders on the 17th day of February, 1926, intending to take the child with him, but Mr. and Mrs. Free refused to surrender her and ignored the citation.

Petition for writ of habeas corpus was then filed in this court, but before service was had Anna Miles Free took the child to the state of Texas, thereby evading the service of process; however, the writ was ultimately served on N. R. Free, and he filed herein his return and answer to the petition, denying that said child is in his custody and claims that he does not know her whereabouts, and prays that the writ be discharged and set aside.

Section 444, Comp. Stats. 1921, provides that:

"Writ of habeas corpus shall be granted in favor of parents, guardians, masters, husbands and wives, and to enforce the rights, and for the protection of, infants and insane persons. * * *"

And section 428, Comp. Stats. 1921, provides:

"The sheriff or other person to whom the writ is directed shall make immediate return thereof, and if he neglect or refuse, after due service, to make return, or shall refuse or neglect to obey the writ by producing the party named therein, and no sufficient excuse be shown for such neglect or refusal, the court shall enforce obedience by attachment."

In the recent case of Spurrier v. Spurrier, 111 Okla. 242, 238 Pac. 956, generously supported by authorities therein cited, in the second paragraph of the syllabus, this court said:

"Where the duly appointed guardian files his application for a writ of habeas corpus to regain control of his wards, then exercised by a third party, and it appears from the pleadings and the evidence and the admission of respondent that the applicant for the writ is the legal and, duly appointed and acting guardian, and his guardianship has not been terminated by order of the county court, majority of his ward, or marriage of the ward, the district court is without jurisdiction to hear and determine the fitness and competency of the guardian, and a denial of the writ upon such grounds is error."

The rule laid down by this court in that case eliminates every question raised in the instant case, except the denial of N. R. Free that he has the custody of the child or knows of her whereabouts. A careful review of the evidence taken before the re.eree leads us to the inevitable conclusion that the respondent N. R. Free's conduct, answer, and testimony are shrouded in flimsy and unreasonable evasion and subterfuge. The deputy sheriff testified that when he served the order and writ from the county court of Osage county upon Mr. and Mrs. Free at their home in Pittsburg county, respondent remarked:

"Ed, you know me. I am ready and prepared to give them a good fight, because we are not going to turn the little girl over. I have got attorneys and I am going to have it out with them. We are not going to let her go."

A short time thereafter, according to the respondent's own testimony, he accompanied his wife, Anna Miles Free, and the child to the railroad station at McAlester, where they boarded a train for Texas. He also testified that he had made three or four trips to Texas since their departure and visited them; that on one of these trips he accompanied them from El Paso to Mineral Wells, Tex. He further states, however, that at the time of giving his testimony he did not know their whereabouts.

John Miles, the brother of Mrs. Free, was called as a witness and testified that after the child was taken to Texas he saw her in the custody of Mr. and Mrs. Free in the city of El Paso, and that the respondent told him that he knew that there was some kind of a writ or warrant issued for him in Oklahoma, but as long as he stayed in Texas it could not be served, and that it was their intention to keep the child out of the state of Oklahoma for a period of two years and until she arrived at the age of 14, when she would be legally competent to nominate her own guardian. Substantially the same testimony was given by Mrs. Miles, who testified that she was present when these statements were made. These statements are denied by respondent; however, he does state in his testimony that after he returned to Oklahoma from Texas and the writ in the instant case was served upon him, he had made no effort to comply with it and had not tried to learn where the child was. The only defense urged in the pleadings and in the briefs filed by counsel for respondent is, that because the child was not in the actual physical custody of the respondent at the time the writ was served and he did not know its whereabouts, that he should be relieved from any effort to comply with the writ; his counsel making the statement that:

"The court will not make an order requiring him to do something that is impossible for him to do."

We quite agree with counsel in that statement, but the whole record from beginning to end shows that the child is in reality under his control, and that he has persistently connived and maneuvered to evade the order of the county court of Osage county and of this court. With such subterfuges as the evidence shows respondent to have indulged in we have but little patience, and equally as little with counsel, who are sworn officers of the court, in counseling and advising such a course, if it has been done.

Under the rule laid down in Spurrier v. Spurrier, supra, the county court of Osage county has complete and exclusive jurisdiction over the affairs of this child, and if respondent and his wife desire any change in the custody of said child it is their duty to make application to that tribunal for such change. We have complete confidence that the courts of this state, having proper jurisdiction, will properly safeguard the interests of all minors, and it ill becomes any citizen, in order to evade the processes of courts, to flee the state and ignore the court's orders, and it is equally reprehensible to assist in doing so.

It is therefore ordered that the respondent forthwith return Marie Versa Crowther to Eugene Crowther, the petitioner herein, and that the costs of this proceeding be taxed to the respondent.

NICHOLSON, C. J., and MASON, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See 29 C. J. p. 111, §104; p. 167, §191; 12 R. C. L. p. 1230.